**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Peay and Associates, LLC, individually, and on behalf of all those similarly situated, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>First Community Bank, a subsidiary of First Community Corporation, United Community Bank, Inc., First Citizens Bank, a division of First Citizens Bank & Trust, Co., TD Bank, N.A., a/k/a America's Most Convenient Bank, a subsidiary of TD Bank Group, Michael Crapps, as Director for First Community Bank, H. Lynn Harton, as Director for United Community Bank, Frank B. Holding, Jr., as Director for First Citizens Bank, and Amy Brinkley, as Director for TD Bank, )<br>)<br>Defendants. ) | Civil Action No.: _____ |

**DEFENDANTS UNITED COMMUNITY BANKS, INC. AND H. LYNN HARTON'S
NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, Defendants United Community Banks, Inc.[1] and H. Lynn Harton remove the above-captioned civil action currently

---

[1] United Community Banks, Inc. was incorrectly named in this lawsuit as "United Community Bank, Inc." United Community Banks, Inc. is not a proper defendant in this lawsuit, as it is the holding company for United Community Bank, which is a state-chartered bank organized under the laws of Georgia. United Community Bank is a wholly-owned subsidiary of United Community Banks, Inc. This Notice of Removal is brought on behalf of United Community Banks, Inc., United Community Bank, and H. Lynn Harton (collectively, "UCB"). In filing this Notice of Removal, however, UCB does not waive and specifically reserves any and all defenses, exceptions, rights, and motions. No statement or omission in this Notice shall be deemed an admission of any allegations or damages sought.

1

pending in the Circuit Court of the Eighth Judicial Circuit in Laurens County, South Carolina, Civil Action No. 2020-CP-30-00508 (the "State Court Action"), to the United States District Court for the District of South Carolina, Greenville Division, based on federal question jurisdiction and jurisdiction provided by the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, UCB would respectfully show as follows:

## I.     STATEMENT OF THE CASE

On June 15, 2020, Plaintiff Peay and Associates, LLC ("Plaintiff") filed its original class action Complaint (the "Complaint") in Laurens County, South Carolina.[2] UCB was not served with a copy of the original Complaint. Plaintiff filed a First Amended Complaint (the "Amended Complaint") on June 17, 2020.[3] UCB was served with a copy of the Amended Complaint on June 19, 2020, through its registered agent for service of process. In the Amended Complaint, Plaintiff claims that it acted as a borrower's agent by assisting small businesses in applying for Paycheck Protection Program ("PPP") loans offered by UCB, First Community Bank, First Citizens Bank, and TD Bank, N.A. (collectively, the "Defendant Lenders") under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). (Am. Compl. ¶¶ 2–4.) Plaintiff asserts that the Defendant Lenders have wrongfully refused to pay the agent fees owed to Plaintiff under the CARES Act and its implementing regulations. (*Id.*) Plaintiff alleges putative class claims for declaratory relief, unjust enrichment, conversion, breach of fiduciary duty, and negligence per se. Plaintiff seeks, among other things, actual and consequential damages, punitive damages, attorneys' fees, and pre- and post-judgment interest. (*Id.* at Prayer for Relief.)

---

[2] A copy of Plaintiff's Complaint is attached as **Exhibit A**.
[3] A copy of Plaintiff's Amended Complaint is attached as **Exhibit B**.

## II.     FEDERAL QUESTION JURISDICTION

Removal of this action is proper because this Court has original federal question jurisdiction under 28 U.S.C. § 1331, which provides district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Original federal question jurisdiction exists in this case because Plaintiff's right to relief on its purported state law causes of action "necessarily depends on resolution of a substantial question of federal law." *Sherr v. S.C. Elec. & Gas Co.*, 180 F. Supp. 3d 407, 413 (D.S.C. 2016) (internal citations and quotations omitted); *see also Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 808 (1986) ("[A] case may arise under federal law where the vindication of a right under state law necessarily turn[s] on some construction of federal law.").

Here, a substantial and disputed question of federal law is *the* primary and pervasive element of Plaintiff's Amended Complaint. The fundamental question in this case is whether federal law and regulations require the Defendant Lenders to compensate Plaintiff for its purported work helping borrowers apply for and obtain federally-backed loans under a federal program. (*See* Am. Compl. ¶ 90.a.) Specifically, Plaintiff brings this action to seek payment of fees owed to "Agents"—a defined term under 13 C.F.R. § 103.1(a)—whom assisted borrowers in obtaining PPP loans. (*Id*. at ¶¶ 2–6.)

By way of background, the CARES Act is a federal statute enacted by Congress to address nationwide financial concerns caused by COVID-19. (*Id*. at ¶ 32.) The PPP is a federal program created under the CARES Act and implemented by the Small Business Administration ("SBA"), which is a federal agency. (*Id*. at ¶ 33.) The PPP expands an existing federal program and provides loans to qualifying consumers across the country which are guaranteed by the SBA. (*See id*. at ¶ 34.)

The CARES Act provides that the SBA "shall reimburse" lenders for servicing PPP loans and establishes the reimbursement amounts as percentages of the PPP loans serviced. 15 U.S.C. § 636(a)(36)(P)(i). But the statute only briefly addresses agent fees. It does so only to delegate to the SBA authority to limit the fee amount any agent may collect for work connected to the PPP. *Id.* § 636(a)(36)(P)(ii). Pursuant to this authority, the SBA issued regulations providing that any agent fees could not exceed set amounts the SBA views as "reasonable"—amounts that, like lender fees, are based on the PPP loan amounts. Interim Final Rule, 85 Fed Reg. at 20816. Plaintiff's allegations against the Defendant Lenders in this action are founded upon their administering of PPP loans, whereby they agreed to be bound by the terms of the PPP and obligations set forth in the Interim Final Rules. (*See* Am. Compl. ¶ 12.)

Plaintiff contends that it is a duly authorized agent under the terms of the PPP because it assisted its clients in gathering the necessary information, paperwork, and calculations to apply for PPP loans. (*Id*. at ¶¶ 62–63.) Plaintiff asserts that it is entitled to certain agent fees to be paid by the Defendant Lenders out of the lender fees that they received from the federal government. (*Id*. at ¶¶ 66–67.) Stated another way, Plaintiff alleges that its entitlement to agent fees arises out of its work helping clients comply with the federal program's requirements in order to receive federally-backed loans. (*Id*. at ¶¶ 3–4.) The calculation of the amount of agent fees Plaintiff believes the Defendant Lenders should have paid would necessarily involve the use of formulas established by the CARES Act and the maximum agent fee amounts set out by the SBA. (*See id*. at ¶¶ 39, 42–43.) In essence, Plaintiff contends that it is entitled to federal funds issued by the federal government as part of a federal program. Thus, whether Plaintiff has a claim under the causes of action asserted in the Amended Complaint necessarily turns on the construction of the CARES Act, the PPP, and pertinent federal regulations.

Plaintiff tries to cast its purported entitlement to agent fees in state-law terms by alleging various state law causes of action.  For example, Plaintiff asserts a cause of action for unjust enrichment, and alleges that the Defendant Lenders have been "unjustly enriched by retaining the full benefit of the processing fees for agent assisted PPP loans." (*Id*. at ¶ 110.)  Plaintiff also seeks declaratory relief under the South Carolina Uniform Declaratory Judgment Act, S.C. Code Ann. § 15-53-10, *et seq.*, and alleges that the Defendant Lenders have "refused to provide the applicant agents with duly owed compensation, in contravention of the language of the PPP."  (*Id*. at ¶ 101.)

But whether Plaintiff is owed any portion of federal funds for work it performed for PPP borrowers hinges on the entirely federal issue of whether the CARES Act and/or the SBA's implementing regulations require the Defendant Lenders to pay Plaintiff those funds.  Plaintiff's state-law claims thus stem directly from federal law and cannot be resolved without resort to it.

The federal law at issue here is both novel and fiercely disputed.  Congress enacted the CARES Act just months ago, and the SBA issued evolving guidance over the weeks that followed. Meanwhile, lenders like UCB rushed to serve their small business customers.  In recent months, entities like Plaintiff have started to claim that they have been denied agent fees for work on PPP applications.  Multiple civil actions raising these claims are now pending in federal courts across the country, and are now subject to a Motion to Transfer to the Judicial Panel on Multidistrict Litigation.

Whether the CARES Act and PPP require lenders to compensate purported borrower's agents out of any lender fees they receive forms the central issue in these federal actions.  It is also the central question here, and a question on which the Defendant Lenders and Plaintiff take opposing stances. Because the substance of Plaintiff's action hinges on a contested question of

5

federal law, it necessarily arises under federal law.  Removal to this Court is thus proper under 28 U.S.C. §§ 1331 and 1441(a).

### III.     CLASS ACTION FAIRNESS ACT JURISDICTION

CAFA provides an additional, independent basis for removal of this action.  CAFA grants federal district courts original jurisdiction over putative class actions where the proposed class contains more than 100 members, any member of the putative class is a citizen of a state different from any defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.[4]  28 U.S.C. §§ 1332(d), 1453(b).  CAFA was "enacted to facilitate adjudication of certain class actions in federal court" and should thus "'be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. Rep. No. 109-14, at 43 (2005)); *see also Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165, 170 (4th Cir. 2018) (citing *Dart Cherokee*, 574 U.S. at 82) ("[N]o antiremoval presumption attends cases invoking CAFA.").

This Court has original jurisdiction over this case under CAFA, and removal is therefore proper, because (1) the proposed class contains more than 100 members; (2) there is minimal diversity between the parties; and (3) the total amount in controversy exceeds $5,000,000.

---

[4] CAFA defines "class action" to mean any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action.  28 U.S.C. § 1332(d)(1)(B). Plaintiff filed the State Court Action under South Carolina Rule of Civil Procedure 23(a), South Carolina's rule authorizing class actions.  The State Court Action is therefore a "class action" as defined by CAFA.

A. **The Proposed Class Contains More Than 100 Members.**

The proposed class satisfies CAFA's numerosity requirement. *See* 28 U.S.C. § 1332(d)(5)(B). Plaintiff's Amended Complaint defines the proposed class as: "All agents as defined by the SBA Regulations, who are citizens, whether corporate or individual, and residents of the State of South Carolina, who assisted, facilitated, referred, or otherwise acted as an 'agent' for any PPP loan submitted to Defendant Lenders…." (Am. Compl. ¶ 88.a.) Plaintiff alleges that the proposed class "consists of hundreds of agents." (*Id.* at ¶ 89.) Accordingly, CAFA's requirement that the putative class consist of at least 100 members is met.

B. **There is Minimal Diversity Between the Parties.**

CAFA "replace[s] the ordinary requirement of complete diversity of citizenship among all plaintiffs and defendants with a requirement of minimal diversity." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014) (internal citations omitted). Minimal diversity requires only that the citizenship of one plaintiff be different from the citizenship of one defendant. 28 U.S.C. § 1332(d)(2)(A).

CAFA's minimal diversity requirement is satisfied because diversity exists between Plaintiff and United Community Banks, Inc. Plaintiff is a limited liability company organized and existing pursuant to the laws of the State of South Carolina. (Am. Compl. ¶ 7.) The citizenship of an LLC is determined by the citizenship of each of its members. *See, e.g.*, *General Technology Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004). Plaintiff has alleged that it and the other members of the purported class are all citizens of the State of South Carolina. (Am. Compl. ¶ 88.a.) Plaintiff is thus a citizen of South Carolina for purposes of diversity jurisdiction.

United Community Banks, Inc. is a Georgia corporation and is headquartered in Blairsville, Georgia.[5]  *See* Georgia Secretary of State Business Information, attached as **Exhibit C**.  United Community Banks, Inc. is thus a citizen of Georgia for purposes of diversity jurisdiction.  28 U.S.C. § 1332(c)(1).  This action therefore meets CAFA's minimal diversity requirement.

### C.     The Amount in Controversy Exceeds $5,000,000.

To establish jurisdiction under CAFA, the amount in controversy must exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  The claims of the individual proposed class members are aggregated to determine if the amount in controversy exceeds that required sum.  28 U.S.C. § 1332(d)(6).  A notice of removal based on CAFA "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee*, 574 U.S. at 87–88; *see also* 28 U.S.C. § 1446(a).  The defendant need not include evidence establishing the amount in controversy unless the plaintiff contests, or the court questions, the defendant's allegations.  *See Dart Cherokee*, 574 U.S. at 87–88.  Should the defendant's allegations be disputed, the district court must find by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.  *See* 28 U.S.C. § 1446(c)(2)(B).

"When a plaintiff's complaint leaves the amount of damages unspecified, the defendant must provide evidence to show what the stakes of litigation are given the plaintiff's actual demands."  *Scott v. Cricket Communications, LLC*, 865 F.3d 189, 194 (4th Cir. 2017) (internal quotations and citations omitted).  "The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but an estimate of the amount that will be put at issue in the course of the litigation."  *Id*. at 196.  If the court "is uncertain

---

[5] United Community Bank, who has not been named in this lawsuit, is a state-chartered bank organized under the laws of Georgia.  United Community Bank is a wholly-owned subsidiary of United Community Banks, Inc., a bank holding company.

about whether" the jurisdictional amount in controversy is met, it "should err in favor of exercising jurisdiction over the case." S. Rep. No. 109-14, at 42–43.

Based on the following calculations, the amount in controversy exceeds $5,000,000 for the purpose of establishing subject matter jurisdiction under CAFA. UCB's allegations and calculations are not admissions of liability or damages. UCB expressly reserves the right to further refine these allegations and calculations and/or identify any additional evidence establishing the amount in controversy should any aspect of the amount in controversy set forth herein be challenged.

### i.     The Small Business Administration Capped Agent Fee Amounts.

The CARES Act does not establish the amount of fees that agents may collect. The statute instead provides that "[a]n agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator." 15 U.S.C. § 636(a)(36)(P)(ii). Pursuant to this authority to establish limits on agent fees, the SBA issued regulations providing that any agent fees paid out of lender fees could not exceed:

(1) 1% of the loan amount for loans of not more than $350,000;

(2) .5% of the loan amount for loans of more than $350,000 but less than $2,000,000; and

(3) .25% of the loan amount for loans of more than $2,000,000.

*See* Interim Final Rule, 85 Fed Reg. at 20816; *see also* Am. Compl. ¶¶ 41–43.

### ii.    The Aggregate Amount in Controversy Exceeds CAFA's Requirement Based Upon the Allegations of the Amended Complaint.

Plaintiff alleges that its proposed class consists of hundreds of PPP agents that assisted borrowers in South Carolina in applying for PPP loans from Defendant Lenders. (Am. Compl. ¶¶ 88–89.) Indeed, Plaintiff alleges that *any* agent that assisted a borrower in South Carolina in applying for PPP loans from Defendant Lenders is a class member, because Defendant Lenders

have a uniform practice of not paying agent fees in connection with PPP loans. (*See id.* at ¶¶ 68–77, 88.)  And, like Plaintiff, these agents likely assisted numerous borrowers that sought loans from the Defendant Lenders. (*See id.* at ¶¶ 62–65.)  The Amended Complaint alleges that "hundreds" of claims for agent fees exist related to the billions of dollars in PPP loans that the Defendant Lenders funded in South Carolina, and that "*many* qualifying South Carolina businesses used agents to assist in preparing and submitting applications." (*Id.* at ¶¶ 3, 89 (emphasis added).)

### (a)     Actual Damages

Based on the Amended Complaint's allegations, the amount in controversy, aggregated among all proposed class members, well exceeds $5,000,000.  On July 6, 2020, the SBA released detailed PPP loan data. *See* July 6, 2020 Press Release, *SBA and Treasury Announce Release of PPP Loan Data*, https://www.sba.gov/about-sba/sba-newsroom/press-releases-media-advisories/sba-and-treasury-announce-release-ppp-loan-data.  The data provides the exact amount of each loan made under $150,000.  For loans of $150,000 and above, the data provides ranges for the amounts of these loans as follows: (1) $150,000 to $350,000; (2) $350,000 to $1,000,000; (3) $1,000,000 to $2,000,000; (4) $2,000,000 to $5,000,000; and (5) $5,000,000 to $10,000,000.

Using this data, even conservative estimates demonstrate that the amount in controversy is well over $5,000,000.  If only half of Defendant Lenders' borrowers used agents to prepare their applications, and assuming the midpoint of each range of loan amounts is used, then the total amount of actual damages sought by the proposed class is $3,951,072.58.  A chart detailing these calculations is attached hereto as **Exhibit D**.

The Amended Complaint not only seeks entitlement to agent fees, but also requests "disgorgement of the entire proceeds of Defendant Lenders' ill-gotten gains." (Am. Compl. ¶¶

112, 120.) To the extent that Plaintiff is seeking disgorgement of the *entire* amount of lender fees[6] received by Defendant Lenders, then certainly the amount-in-controversy requirement would be met. The same is true if Plaintiff is only seeking disgorgement of the lender fees received by Defendant Lenders on the loans that the proposed class helped prepare applications for. Again, assuming that only half of Defendant Lenders' borrowers used agents and taking the midpoint of each range of loan amounts, the total amount of damages for disgorgement of the entire proceeds of Defendant Lenders' fees on these loans would be $20,617,362.90. A chart detailing these calculations is attached hereto as **Exhibit E**.

### (b) Punitive Damages

In addition to actual damages, Plaintiff seeks punitive damages. (Am. Compl. ¶¶ 112, 120, 129, 138, Prayer for Relief.) When calculating the amount in controversy, a court must consider punitive damages to determine if the requirements for removal are met. *See Mattison v. Wal-Mart Stores, Inc.*, No. 6:10-cv-01739, 2011 WL 494395, at *2 (D.S.C. Feb. 4, 2011) (holding that the court must consider requests for punitive damages in calculating the amount in controversy); *Am. Health & Life Ins. Co. v. Heyward*, 272 F. Supp. 2d 578, 581 (D.S.C. 2003) ("punitive damages [] must be included in the calculation of the amount in controversy").

In light of the measures of actual damages outlined above, the request for punitive damages clearly causes the aggregate amount in controversy to exceed the required amount under CAFA.[7]

---

[6] The CARES Act provides that the SBA will reimburse lenders authorized to make covered loans at a rate based on the balance of the loan as follows: (1) 5% for loans not more than $350,000; (2) 3% for loans more than $350,000 but less than $2,000,000; and (3) 1% for loans of $2,000,000 or more. *See* 15 U.S.C. § 636(a)(36)(P)(i); Am. Compl. ¶ 39.

[7] In *Woodward v. Newcourt Commercial Finance Corp.*, 60 F. Supp. 2d 530, 532 (D.S.C. 1999), the Court cited its "experience that the plaintiff's bar rarely seeks less than ten times damages for punitive damages."

Further supporting this conclusion are the multiple putative class actions filed in federal court, of which this Court can take judicial notice. *See* Fed. R. Evid. 201(b). These class actions allege that the federal courts have CAFA jurisdiction over their claims for agent fees because their proposed class of unpaid agents is sufficiently numerous and the amount in controversy exceeds $5,000,000. *See* Compl. ¶ 17, *Ratliff CPA Firm, PC v. Truist Bank*, Civil Action No. 2:20-cv-02207-BHH (D.S.C. filed June 11, 2020); Compl. ¶ 24, *Full Compliance, LLC v. Amerant Bank, N.A.*, Civil Action No. 1:20-cv-22339 (S.D. Fla. filed June 5, 2020); Compl. ¶ 19, *Alliant CPA Group, LLC v. Bank of America, Corp.*, Civil Action No. 1:20-cv-02026-MLB (N.D. Ga. filed May 11, 2020); Am. Compl. ¶ 22, *Sport & Wheat CPA PA v. ServisFirst Bank Inc.*, Civil Action No. 3:20-cv-05425-TKW-HTC (N.D. Fla. filed April 26, 2020). The number of these class actions filed across the country have resulted in a Motion to Transfer PPP agent fee actions to the Judicial Panel on Multidistrict Litigation. *See* Mot. to Transfer, *In re: Paycheck Protection Program ("PPP") Agent Fees Litigation*, MDL No. 2950 (filed May 22, 2020).

    **D.**    <u>**No Exceptions to CAFA Jurisdiction Apply.**</u>

The exceptions to CAFA jurisdiction, both discretionary and mandatory, do not apply in this case. *See* 28 U.S.C. § 1332(d)(3)–(4). As an initial matter, Plaintiff bears the burden of proving that a discretionary or mandatory exception to CAFA applies. *See Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 681 (4th Cir. 2018). Moreover, CAFA's provisions granting federal court jurisdiction are to "be read broadly" and the removal exceptions should be "narrowly construed." *Dominion Energy, Inc. v. City of Warren Police & Fire Retirement System*, 928 F.3d 325, 336 (4th Cir. 2019) (citing S. Rep. No. 109-14, at 43, 45 (2005)).

The discretionary exceptions to CAFA jurisdiction apply only if greater than one-third but less than two-thirds of the members of the proposed class are citizens of the State in which the

action was originally filed.  28 U.S.C. § 1332(d)(3).  Here, Plaintiff has alleged that the class consists entirely of citizens of South Carolina.  (Am. Compl. ¶ 88.a.)  Thus, the discretionary exceptions are inapplicable.

Likewise, the mandatory exceptions to CAFA jurisdiction do not apply in this case.  The "home state exception" set forth in 28 U.S.C. § 1332(d)(4)(B), provides that a district court must decline to exercise jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  This exception does not apply because the primary defendants in this case are not all citizens of South Carolina.

While CAFA does not define the term "primary defendants," "courts tasked with determining whether a defendant is a 'primary defendant' under CAFA should … determine whether the defendant is the 'real target' of the plaintiffs' accusations."  *Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 505 (3d Cir. 2013).  Here,  Plaintiff's  allegations  are primarily targeted at the Defendant Lenders, which Plaintiff refers to as a collective group throughout the Amended Complaint.  (*See, e.g.*, Am. Compl. ¶¶ 1–5.)  Therefore, all of the Defendant Lenders are "primary defendants" for purposes of determining whether the home state exception applies.

Courts across the country have interpreted the home state exception to require remand only if *all* primary defendants are citizens of the State in which the action was originally filed.  "[B]y using the word 'the' before the words 'primary defendants' rather than the word 'a', the statute requires remand under the home state exception only if *all* the primary defendants are citizens of the state."  *Vodenichar*, 733 F.3d at 506 (emphasis added); *see also Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 296 (D. Mass. 2009) (noting that "Courts generally agree that the term

13

'the primary defendants' means that *all* primary defendants must be citizens of the state concerned"). United Community Banks, Inc. is a citizen of Georgia. *Supra* Section III.B. Therefore, because not all primary defendants are citizens of South Carolina, the home state exception does not apply and removal of this action is proper.

Furthermore, the "local controversy exception" set forth in 28 U.S.C. § 1332(d)(4)(A) does not require remand. Pursuant to this exception, a district court must decline to exercise jurisdiction if the following conditions are met: (1) greater than two-thirds of the class of plaintiffs are citizens of the State in which the action was originally filed; (2) at least one defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims asserted is a citizen of the State in which the action was originally filed; (3) the principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and (4) during the three-year period preceding the filing of the class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.[8] *See* 28 U.S.C. § 1332(d)(4)(A).

The local controversy exception does not apply because in the recent months preceding the filing of Plaintiff's Amended Complaint, other PPP agent fee class actions have been filed that involve identical or similar allegations about some of the same defendants named in this lawsuit.

---

[8] The inquiry under this last prong "should not be whether identical (or nearly identical) class actions have been filed. Rather, the inquiry is whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of action were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects)." 151 Cong. Reg. H723, H728 (Daily Ed. Feb. 17, 2005). In other words, "[w]hen a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that the [local controversy] exception is intended to address." S. Rep. No. 109-14, at 40–41 (2005).

14

*See, e.g.*, *Alliant CPA Group, LLC v. United Community Bank and United Community Bank, Inc.*, Civil Action No. 1:20-cv-02026 (N.D. Ga. filed May 11, 2020); *Ratliff CPA Firm, PC v. First-Citizens Bank & Trust Company*, Civil Action No. 2:20-cv-02041 (D.S.C. filed May 29, 2020). Therefore, the local controversy exception does not apply and removal is proper.

### IV.    VENUE IS PROPER

The United States District Court for the District of South Carolina, Greenville Division, is the proper place to file this Notice of Removal because it is the federal district court that embraces the place where the State Court Action is pending. *See* 28 U.S.C. §§ 1441(a), 121(6).

### V.    REMOVAL IS TIMELY

Pursuant to 28 U.S.C. § 1446(b)(1), removal is timely if filed within thirty days after the receipt by the defendant, through service or otherwise, of the initial pleading setting forth the claims for relief. Plaintiff filed the Amended Complaint on June 17, 2020, and UCB was served with the Amended Complaint on June 19, 2020. Thus, this Notice of Removal is filed within the timeframe provided by 28 U.S.C. § 1446(b)(1).

### VI.    OTHER PROCEDURAL REQUIREMENTS

Pursuant to 28 U.S.C. § 1446(d), UCB has contemporaneously filed a copy of this Notice of Removal with the Circuit Court of the Eighth Judicial Circuit in Laurens County, South Carolina, where the State Court Action is pending. In addition, UCB is serving a copy of the Notice of Removal on counsel for Plaintiff and the other Defendants.

Pursuant to 28 U.S.C. § 1446(a), UCB is filing separately herewith copies of all process, pleadings, and other orders served upon it in the State Court Action.

## VII.  CONCLUSION

UCB has satisfied the requirements for removal under 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, and hereby removes the State Court Action to this Court. UCB respectfully requests that the Court enter such other and further orders as may be necessary to accomplish the requested removal.

WHEREFORE, UCB hereby removes the action from the Circuit Court of the Eighth Judicial Circuit in Laurens County, South Carolina, to the United States District Court for the District of South Carolina, Greenville Division, and respectfully requests that said District Court assume exclusive jurisdiction of this action and that the Circuit Court of the Eight Judicial Circuit in Laurens County, South Carolina take no further action.

    Respectfully submitted,

    NELSON MULLINS RILEY & SCARBOROUGH LLP

    By: *s/ B. Rush Smith III*
        B. Rush Smith III
        Federal Bar No. 5031
        E-Mail: rush.smith@nelsonmullins.com
        Carmen Harper Thomas
        Federal Bar No. 10170
        E-Mail: carmen.thomas@nelsonmullins.com
        Katie E. Towery
        Federal Bar No. 12861
        E-Mail: katie.towery@nelsonmullins.com
        1320 Main Street / 17th Floor
        Post Office Box 11070 (29211-1070)
        Columbia, SC 29201
        Tel: (803) 799-2000
        Fax: (803) 256-7500

    *Attorneys for Defendants United Community Banks, Inc. and H. Lynn Harton*

Greenville, South Carolina
July 17, 2020