# EXHIBIT A

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

IN THE STATE OF SOUTH CAROLINA  )   IN THE COURT OF COMMON PLEAS
COUNTY OF LAURENS  )   FOR THE 8th JUDICIAL CIRCUIT

|  |  |
|---|---|
| IN THE STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF LAURENS ) | FOR THE 8th JUDICIAL CIRCUIT |
| ) | C/A No.: 2020-CP-30-_____ |
| Peay and Associates, LLC, individually, ) | |
| and on behalf of all those similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **SUMMONS** |
| v. ) | **(Jury Trial Demanded)** |
| ) | |
| First Community Bank, a subsidiary of ) | |
| First Community Corporation, United ) | |
| Community Bank, Inc., First Citizens ) | |
| Bank, a division of First Citizens Bank & ) | |
| Trust, Co., and TD Bank, N.A., a/k/a ) | |
| America's Most Convenient Bank, a ) | |
| subsidiary of TD Bank Group, ) | |
| ) | |
| Defendants. ) | |

TO:    THE ABOVE-NAMED DEFENDANTS:

     YOU ARE HEREBY SUMMONED and required to Answer the Complaint in the above-captioned matter, a copy of which is served upon you, and to serve a copy of your Answer upon undersigned counsel for Plaintiffs at the STROM LAW FIRM, LLC, at 6923 N. Trenholm Road, Columbia, South Carolina 29206, within thirty (30) days of service, exclusive of the date of service. If you fail to respond to this Complaint within the time prescribed above, judgment by default will be rendered against you for the relief demanded in the complaint.

                    Respectfully Submitted,

                    *s/ A. Gibson Solomons, III*
                    Daniel A. Speights (SC Bar #5207)
                    A. Gibson Solomons, III (SC Bar #68291)
                    SPEIGHTS & SOLOMONS, LLC
                    100 Oak Street East
                    Hampton, SC 29924
                    TEL: (803) 943-4444 / FAC: (803) 943-4599
                    dspeights@speightsandsolomons.com
                    gsolomons@speightsandsolomons.com

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

*s/ Jessica L. Fickling*
J. Preston Strom, Jr. (SC Bar #5400)
Jessica L. Fickling (SC Bar #100161)
STROM LAW FIRM, LLC
6923 N. Trenholm Road, Suite 200
Columbia, SC 29206
TEL: (803) 252-4800 / FAC: (803) 252-4801
petestrom@stromlaw.com
jfickling@stromlaw.com

*ATTORNEYS FOR PLAINTIFF*

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

IN THE STATE OF SOUTH CAROLINA )     IN THE COURT OF COMMON PLEAS
COUNTY OF LAURENS )                  FOR THE 8th JUDICIAL CIRCUIT
                                )     C/A No.: 2020-CP-30-_____
Peay and Associates, LLC, individually, )
and on behalf of all those similarly situated, )
                                )
         Plaintiff, )
                                )     **COMPLAINT**
v. )                                  **(Jury Trial Demanded)**
                                )
First Community Bank, a subsidiary of )
First Community Corporation, United )
Community Bank, Inc., First Citizens )
Bank, a division of First Citizens Bank & )
Trust, Co., and TD Bank, N.A., a/k/a )
America's Most Convenient Bank, a )
subsidiary of TD Bank Group, )
                                )
         Defendants. )
_____)

       PLAINTIFF, Peay and Associates, LLC, on behalf of itself and all those similarly situated, hereby brings this class action complaint against the above-named Defendants, and would demonstrate unto this court as follows:

## NATURE OF THE CASE

       1.    This action seeks equitable and legal relief on behalf of Plaintiff Peay and Associates, LLC, as well as all those similarly situated, against Defendants First Community Bank, United Community Bank, Inc., TD Bank Group, Inc. a/k/a Toronto Dominion Bank, and First Citizens Bank, a division of First Citizen Bank & Trust, Co., ("Defendant Lenders") all legally incorporated banking institutions who issued and administered loans in South Carolina to qualifying South Carolina businesses who participated as lenders under the emergency extension of the Small Business Administration's small business loan program known as the Paycheck Protection Program, and Defendants Michael Crapps, H. Lynn Harton, and Frank B. Holding, Jr.

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

("the individual Defendants), who, at all times relevant to this Complaint served as the Directors and chairpersons of Defendant Lenders' respective boards.

2.      As set forth herein, under the terms of the act known as the Coronavirus Aid, Relief, and Economic Securities Act ("CARES Act"), which was passed by the United States Senate on March 25, 2020, loans administered under the Paycheck Protection Program were offered to qualifying small businesses on a first-come first-served basis up to exhaustion of the original $349 billion relief package. Lenders participating in this program would be paid a processing fee dependent upon the size of the loan.

3.      To receive processing fees, a loan had to be successfully administered to the applying small business. To ensure efficiency, many qualifying South Carolina businesses used agents to assist in preparing and submitting applications. According to the plain language of the Paycheck Protection Program Interim Final Rule, these Defendant Lenders were responsible for compensating Agents who helped to prepare successful applications.

4.      Plaintiff and the putative class ("Plaintiffs," "Plaintiff Class") are duly authorized "Agents" under the plain language of the Paycheck Protection Program Interim Final Rule and have assisted in submitting loan applications on behalf of South Carolina small businesses to Defendant Lenders. Though Defendant Lenders have received and will receive substantial processing fees from these properly submitted applications, Defendant Lenders have refused to pay the compensation owed to Plaintiffs both under the common law of South Carolina and the Act.

5.      As a direct result of Defendants' conduct, collectively and individually, Plaintiffs now seek declaratory and legal relief against Defendants including but not limited to  payment of the compensation owed to the Plaintiff and putative class, disgorgement of the Defendants' ill-

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

gotten gains, and for such other relief, including attorney's fees and costs, as this court deems just and proper.

6.     The acts, omissions, conduct and causes of action set forth herein, are plead collectively and in the alternative, Plaintiffs having been informed that they need not select a remedy until a trial of this matter.

## **PARTIES**

7.     At all times relevant to this complaint, Plaintiff Peay & Associates, LLC ("Plaintiff P&A"), has been a limited liability corporation organized and existing pursuant to the laws of South Carolina, with a principal place of business in Clinton, South Carolina. All of the acts, omissions, conversations, and applications described herein, and submitted by Plaintiffs P&A were prepared in Clinton, South Carolina. Plaintiff P&A has seven (7) employees, three (3) of whom are licensed certified public accountants, in good standing. Founding member Jay Peay has been in practice for more than 25 years, and is a certified public accountant, certified personal financial specialist and charted Global Management Accountant. The vast majority of Plaintiff's clients are South Carolina individuals, and corporations, and the vast majority of corporations Plaintiff serves are South Carolina businesses serving the Clinton community, and surrounding areas.

8.     At all times relevant to this complaint, Defendant First Community Bank a/k/a First Community Corp., ("Defendant FCB"), has been a banking institution organized and existing pursuant to South Carolina law, with over 20 locations across the states of South Carolina and Georgia, with a location in Newberry, South Carolina. Defendant FCB has conducted substantial business in South Carolina, and has provided banking, investment, mortgage, lending, trust, and payment services to individuals, businesses, governmental entities and other financial institutions in South Carolina, including clients of Plaintiff P&A. As a banking institution, Defendant FCB

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

must abide by the statutes, regulations, advisories, interim rules, and responsibilities of its industry, and its charter, including the statutes, regulations, advisories, and interim rules associated with small business loans. As a banking institution organized and existing in South Carolina, at all times relevant to this complaint, Defendant FCB has been subject to the regulations of the South Carolina Board of Financial Institutions.

9.     At all times relevant to this complaint, Defendant United Community Bank, Inc. ("Defendant UCB"), has been a banking institution organized and existing pursuant to Georgia law, with locations across Georgia, South Carolina, North Carolina, and Tennessee, availing itself of the laws and privileges of South Carolina, and transacting substantial business in and with customers in South Carolina. Defendant UCB offers business and personal banking, real estate services, mortgage services, and financial advisory and wealth management services, and has participated in administering small business loans.  As a banking institution, Defendant UCB has been obliged to abide by the statutes, regulations, advisories, interim rules, and responsibilities of its industry, and its charter, including the statutes, regulations, advisories, and interim rules associated with small business loans.

10.     At all times relevant to this complaint, Defendant First Citizens Bank ("Defendant First Citizens") has been a banking institution, and a division of First Citizen Bank and Trust, Co., a corporation organized and existing pursuant to North Carolina law, with locations throughout South Carolina, conducting substantial business in and with customers in South Carolina, and availing itself of the laws and privileges of South Carolina. Defendant First Citizens offers business and personal banking, real estate services, mortgage services, and financial advisory and wealth management services, and has participated in administering small business loans.  As a banking institution, Defendant First Citizens has been obliged to abide by the statutes, regulations,

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

advisories, interim rules, and responsibilities of its industry, and its charter, including the statutes, regulations, advisories, and interim rules associated with small business loans.

11.     At all times relevant to this complaint, Defendant TD Bank, N.A., a/k/a TD Bank, America's Most Convenient Bank, or alternatively as TD Bank U.S. Holding Co., ("Defendant TD"), has been a banking institution organized and existing pursuant to the laws of Delaware, and a subsidiary of Toronto Dominion Bank. TD Bank, N.A., is one of the top 10 banks in the United States with branches throughout the United States, including a branch in Clinton, South Carolina[1]. At all times relevant to this complaint, Defendant TD has conducted substantial business throughout the state of South Carolina, including individual and business banking services to clients of Plaintiff P&A. As a banking institution with substantial business in and around South Carolina, Defendant TD is obliged to abide by their own internal policies and procedures, corporate governance, and guidelines, as well as the responsibilities of its industry, including the statutes, regulations, advisories, and interim rules associated with small business loans.

12.     At all times relevant to this complaint, the aforementioned Defendants ("Defendant Lenders") have been banking institutions who have elected to administer small business loans, and are thus considered "lenders" under the Small Business Administration's[2] Paycheck Protection Program, and agreed to be bound by the terms of the Paycheck Protection Program (e.g. "Lenders must comply with the applicable lender obligations set forth in this interim rule[.]")[3]

---

[1]https://locations.td.com/

[2]The United States Small Business Administration is a federal agency created in 1953 for the purpose of providing counseling and advocacy for United States' small businesses.

[3]https://www.sba.gov/sites/default/files/2020-04/PPP%20Interim%20Final%20Rule_0.pdf

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

13.     Upon information and belief, and at all times relevant to this complaint, Defendant Lenders were acting by and through their members, executives, employees, agents, and/or authorized representatives, and within the course and scope of their employment, and were responsible for exercising adequate oversight and control to ensure adherence and compliance with applicable statues, regulations, advisories and rules of the Paycheck Protection Program.

14.     At all times relevant to this complaint, Defendant Lenders were responsible for conducting their corporate operations regarding lending, including but not limited to budget, oversight, and training, in accord with applicable laws, and the public policy of the state of South Carolina, and had sufficient control over the daily operations and decision making to be charged with actual knowledge of the facts set forth herein, and of the conduct of Defendants' executives, members, employees, agents and/or assigns.

15.     At all times relevant to this complaint, Defendant Michael Crapps ("Defendant Crapps") has been the Chief Executive Officer and President and Director of Defendant FCB. As a "director" subject to the regulations of the South Carolina Board of Financial Institutions, and operating a banking institution organized and existing pursuant to South Carolina law, Defendant Crapps has the authority to control and did exercise control over the other officers, directors, and employees of Defendant FCB, and was responsible for ensuring their compliance with applicable laws. S.C. Code Ann. § 34-3-240(1). With respect to class members, Defendant Crapps possessed the same or similar duties as other bank directors and executives of the Defendant Lenders.

16.     At all times relevant to this complaint, Defendant H. Lynn Harton ("Defendant Harton") has been the President and Chief Executive Officer of Defendant UCB, and previously served as the Chief Operating Officer and Director. As a "director" and the highest-ranking officer of Defendant UCB, at all times relevant to this complaint, Defendant Harton was responsible for

ensuring branch compliance with applicable statutes and regulations, including those set forth in title 34 of the South Carolina Code of laws, and those promulgated by the South Carolina Board of Financial Institutions. With respect to class members, Defendant Harton possessed the same or similar duties as other bank directors and executives of the Defendant Lenders.

17.     At all times relevant to this complaint, Defendant Frank B. Holding, Jr., ("Defendant Holding") has been the chairman of the Board of Directors and Chief Executive Officer of Defendant First Citizens. As a "director" and the highest ranking Officer of Defendant First Citizens, at all times relevant to this complaint, Defendant Holding was responsible for ensuring branch compliance with applicable statutes and regulations, including those set forth in Title 34 of the South Carolina Code of Laws, and those promulgated by the South Carolina Board of Financial Institutions.  With respect to class members, Defendant Holding possessed the same or similar duties as other bank directors and executives of the Defendant Lenders.

18.     At all times relevant to this complaint, Defendant Amy Brinkley ("Defendant Brinkley") was the chairperson and director of Defendant TD's risk committee, a member of the Board's corporate governance committee, and a citizen and resident of Charlotte, North Carolina. As a "Director" and the highest-ranking member of Defendant TD's risk committee, Defendant Brinkley was responsible for reviewing Defendant TD's Enterprise Risk Framework, and for establishing policies and procedures and decision making mechanisms to evaluate major risk to Defendant TD. Accordingly, at all times relevant to this complaint, Defendant Brinkley had the authority to control and did exercise control over the officers, directors, and employees of Defendant TD as it relates to risk, and was responsible for ensuring compliance with applicable laws, including S.C. Code Ann. § 34-3-240(1). With respect to class members, Defendant Brinkley possessed the same or similar duties as the bank directors and executives of the Defendant Lenders.

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

## JURISDICTION AND VENUE

19.     As set forth more fully herein, each of the acts and/or omissions complained of occurred in Laurens County, South Carolina, and Defendant Lenders and the individual Defendants are all individuals, and/or banking institutions organized and existing or located in South Carolina, or transacting substantial and pervasive business in South Carolina, including having physical locations in Laurens County, South Carolina.

20.     As set forth herein, this court has jurisdiction over this action in that the proposed class are all businesses, entities, corporations, and individuals organized and existing pursuant to the laws of South Carolina, or citizens and residents, and licensees of the State of South Carolina, and at least one Defendant Lender is a banking institution organized and existing pursuant to South Carolina law.

21.     As set forth herein, venue is proper before this court because a substantial portion of the acts and omissions complained of occurred in this county, where Plaintiffs completed and submitted loan applications, and where Defendant Lenders, by and through local branches, employees, agents and/or representatives processed these applications, sought additional information related to these applications, and disbursed funds associated with these applications.

## INTRODUCTION

22.     Plaintiffs reallege the preceding paragraphs as though repeated verbatim herein.

23.     According to the 2019 South Carolina Small Business Profile, prepared by the South Carolina district office of the Small Business Administration Office of Advocacy, South Carolina is home to over 418,000 small businesses, collectively constituting more than 46% of South Carolina's workforce.[4]

---

[4] https://www.sba.gov/sites/default/files/2020-05/2019-Small-Business-Profiles-SC.pdf

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

24.     The majority of small businesses in South Carolina have fewer than 100 employees.[5]

25.     As of 2016, small businesses had created over 30,000 new jobs in South Carolina, which has had historically higher unemployment and lower annual growth than other states.[6]

26.     For over 20 years, Plaintiff P&A has been a firm offering accounting, tax, and individual financial services to a variety of clients in Clinton, South Carolina.[7]

27.     As a small business itself, the majority of Plaintiffs' incorporated clients are considered small businesses within the SBA definition.[8]

28.     In or around January of 2020, the World Health Organization ("WHO") and the Centers for Disease Control ("CDC") first indicated the serious nature of the emerging virus, COVID-19, identifying the first case in the United States, and declaring the outbreak a public health emergency of international concern.

29.     On March 11, 2020, after initially declining to declare the spread of COVID-19 a pandemic, the WHO updated its designation.

30.     On March 13, 2020, South Carolina Governor Henry McMaster issued Executive Order Number 2020-08 declaring a state of emergency in South Carolina due to the imminent threat to public health posed by COVID-19.

31.     Thereafter, Governor McMaster issued a series of executive orders related to the impact of COVID-19, and measures undertaken by the state government, incorporating measures

---

[5] *Id.*

[6] *Id.*

[7] http://www.peaycpas.com/about.php

[8] https://www.sba.gov/sites/default/files/2020-05/2019-Small-Business-Profiles-SC.pdf

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

undertaken by the federal government, to slow the spread of the disease, and to assist in the political, and economic crises that emerged due to the virus. For example:

    a. Executive Order Number 2020-09, issued March 15, 2020, directed the closure of all public schools for students and non-essential employees[9];

    b. Executive Order Number 2020-13, issued March 23, 2020 authorized law enforcement to disburse gatherings of three (3) or more people[10];

    c. Executive Order Number 2020-17, issued March 31, 2020, first closed certain non-essential businesses to customers and guests[11];

    d. Executive Order Number 2020-18, issued April 3, 2020 closed restaurants, retail stores, and other venues, facilities and services.

32.    On March 25, 2020 as part of its response to the financial devastation caused by COVID-19 and corresponding public health measures, the United States Senate passed the CARES Act which included almost $900 billion in federal relief earmarked for businesses[12].

33.    The CARES Act authorized creation of the Paycheck Protection Program ("PPP"). Pursuant to its terms, "[t]he intent of the Act is that SBA provides relief to America's small businesses expeditiously…The immediate effective date of this interim final rule will benefit small businesses so that they can immediately apply for the loan with a full understanding of loan terms and conditions."[13]

---

[9]https://governor.sc.gov/sites/default/files/Documents/Executive-Orders/2020-04-06%20eFILED%20Executive%20Order%20No.%202020-21%20-%20Stay%20at%20Home%20or%20Work%20Order.pdf

[10]*Id.*

[11]*Id.*

[12]https://home.treasury.gov/policy-issues/cares

[13]https://www.sba.gov/sites/default/files/2020-04/PPP%20Interim%20Final%20Rule_0.pdf

34. Under the PPP, private qualifying lenders would administer funds that were 100% guaranteed by the SBA.

35. Initially, the CARES Act set aside $349 billion for loans under the PPP, and certain businesses who used the funds appropriately could have as much as the full value of the loans forgiven.

36. In order to induce lenders to participate, and to further encourage new SBA lenders, the CARES Act included a "substantial processing fee."[14]

37. In addition, to encourage lender participation in the PPP, the CARES Act provided that lenders would be held harmless for inaccurate information submitted by borrowers. [15]

38. However, notwithstanding the less stringent oversight lenders would be required to exercise over borrowers, the CARES Act provided: "Lenders must comply with the applicable lender obligations set forth in this interim rule[.]"[16]

39. In exchange for administering the SBA funds, lenders stood to be compensated as follows:

    a.  Five (5) percent for loans not more than $350,000;

    b.  Three (3) percent for loans of not more than $350,000 but less than $2,000,000; and

    c.  One (1) percent for loans of at least $2,000,000.

40. Thereafter, lenders also had the option of selling the loans in the secondary market.

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

41.     The interim rule provides, however, that lenders are responsible for paying agents who assisted a borrower-applicant.

42.     According to the interim rule, "[a]gent fees will be paid by the lender out of the fees the lender receives from the SBA."[17] The agent fees were capped at a set percentage of the total lender fee and included fees for referrals to lenders.

43.     In setting the fees, the interim rule provides, "[t]he Administrator, in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon application requirements and the fees that lenders receive making the PPP loans[.]" [18]

44.     As such, the Act recognized the value of an agent's contribution, and that an agent's assistance of a borrower, even in referring a borrower to a qualified lender, would result in significant monetary benefit to the lender.

45.     As of April 3, 2020, small businesses and sole proprietorships were authorized to begin applying for relief under the PPP. As of April 10, 2020, independent contractors and self-employed individuals were also authorized to apply for funds.

46.     On April 24, 2020, $310 billion of additional funding was added to the PPP through passage of the Paycheck Protection Program and Healthcare Enhancement Act ("PPPEA").

## **FACTUAL BACKGROUND**

47.     Plaintiff repeats and realleges the preceding paragraphs as though set forth verbatim herein.

48.     Under the terms of the PPP, an agent can be any of the following:

a.   An attorney;

---

[17] *Id.*

[18] *Id.*

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

    b.  An accountant;

    c.  A consultant;

    d.  Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

    e.  Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

    f.  A loan broker; or

    g.  Any other individual or entity representing an applicant by conducting business with the SBA.[19]

49.    The SBA small business loan program has long recognized the existence of agents to help facilitate loan applications on behalf of small businesses.

50.    Specifically, under the SBA's traditional 504 loan program for small businesses, a lender and applicant are required to complete SBA Form 159 to disclose agents paid either by the applicant or the lender in connection with an SBA loan application. The form provides: "[w]hen an agent is paid by the SBA Lender, the SBA Lender must complete this form and the SBA Lender and Applicant must both sign the form[.]" [20]

51.    Accordingly, Lenders have been on notice not only that agents may exist to help complete and refer loan applications, but that the Lender must identify every agent receiving compensation from the Lender.

---

[19] https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf?

[20] https://www.sba.gov/sites/default/files/2018-09/Form%20159%20-%20%28FINAL%29%209.10.18.pdf

52.     Rather than suspending the disclosure requirement, the PPP enhanced lender requirements with respect to agents, providing that any agent associated with a PPP loan must be compensated only by the lender.

53.     Moreover, because the funds associated with the PPP were to be administered on a first-come first-served basis, lenders were presumptively on notice that applicants would use professional agents to help complete applications in the most expeditious manner possible.

54.     For example, a successful loan application might require an applicant to complete and gather substantial information and documentation including but not limited to:

    a.  The Loan Calculator Spreadsheet;

    b.  SBA Form 2483;

    c.  Whether the applicant received an SBA Economic Injury Disaster Loan ("EIDL");

    d.  Certificate of Beneficial Ownership Interest;

    e.  Driver's License for each and every 20% or more owner;

    f.  Articles of Incorporation or Organization;

    g.  2019 IRS/State Payroll Forms: 940 or all four quarterly 941;

    h.  2019 Payroll Summary Report by Employee;

    i.  2019 Health Insurance Premium Paid – a monthly statement, or year-end summary;

    j.  2019 Retirement Matching Plan Paid – monthly statement, or year-end summary; and

    k.  Payroll Summary by employee for January through March of 2020.

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

55.     Lenders were thus aware that involvement by an agent would greatly benefit Lenders in a number of particulars, including:

    a.  Reducing the number of points of contact for Lenders requesting additional information;

    b.  Enhancing the application process through the use of licensed professionals or members of professional staff;

    c.  Increasing the number of applications received by lending institutions;

    d.  Increasing the number of applications that a lending institution could successfully process.

56.     Each successful application processed by a Lender constituted good and valuable consideration, in that a processing fee would be paid to the Lender upon disbursement of the funds to the applicant.

57.     Accordingly, every successfully disbursed loan and resultant processing fee where an agent assisted in the application should have resulted in compensation to the agent by the Lender.

58.     Beginning in March of 2020, Plaintiff P&A first became aware that the federal government was contemplating significant legislation whose purpose was to protect the economy during the COVID-19 public health crisis.

59.     The CARES Act, passed on March 25, 2020, included significant relief to small businesses of over $349 billion dollars, which was later increased by an additional $310 billion.

60.     As indicated herein, Plaintiffs are South Carolina entities and licensed professionals serving the individual and corporate citizens of South Carolina that qualify as small businesses according to the SBA definition.

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

61.     Pursuant to Plaintiffs' professional licensures and familiarity with individual client needs, Plaintiffs knew which clients could benefit from receipt of PPP funding, as opposed to other forms of assistance or relief.

62.     Accordingly, upon notice that the government intended for the SBA to administer the PPP funds through private lenders, Plaintiffs commenced to help their clients gather the necessary information, paperwork, and calculations and to apply to qualified Lenders for PPP funding.

63.     These Plaintiffs constitute duly authorized agents under the terms of the PPP.

64.     Each application prepared by Plaintiffs took hours to complete, and, in many instances, required continued follow-up with agents, employees and representatives of the Defendant Lenders, who would contact Plaintiffs for additional information associated with the applications. In addition, Defendant Lenders would contact Plaintiffs when and if a platform or portal for uploading information would change.

65.     Ultimately, as a result of Plaintiffs' efforts, hundreds of applications for local South Carolina small businesses were successfully processed by Defendant Lenders.

66.     Upon information and belief, Defendant Lenders have either already received or will receive substantial compensation paid in processing fees associated with agent-assisted PPP loan disbursements.

67.     However, despite the mandatory obligation that Defendant Lenders compensate agents from the PPP processing fees, Defendant Lenders are refusing to pay the Plaintiffs.

68.     For example, Defendant UCB has patently posted on its website: "United Community Bank will not pay fees to or otherwise compensate anyone acting as an agent of the

business or advising or assisting in the preparation of the Paycheck Protection Program application or otherwise." [21]

69.     In addition, Plaintiff corresponded with Defendant Lenders regarding compensation owed under the PPP for Plaintiff's agent services. Plaintiff received return correspondence from Defendants FCB and UCB on May 13, 2020, and June 2, 2020 respectively.

70.     According to its response, Defendant First Citizens expressly acknowledged that "[t]he SBA rules implementing the PPP program allow a lender to pay an agent fees at a percentage not to exceed the limits specified in the rules[.]" However, contrary to the plain language of the PPP, the letter provides, "[a] PPP lender bank, such as [Defendant First Citzens], is not required to pay a borrower's agent unless the agent is disclosed to the lender bank prior to the borrower submitting its PPP application **and** the lender bank affirmatively agrees at the time to pay the agent." (Emphasis included in original).

71.     In its correspondence, Defendant UCB reiterated its policy, reflected on its website, that "[t]he Bank made the decision that we would not engage with borrower agents or pay borrower agent fees in connection with PPP applications."

72.     The letter continued that Defendant UCB's decision was prompted, in part, by "the minimal effort required for the preparation of materials to be submitted by PPP loan program applicants." The letter concludes, "[i]n light of the statements of the AICPA (and other trade associations) regarding the minimal effort required for preparation of materials…and the lack of a mandate requiring compensation of application-assisted agents, the bank elected not to engage with borrower agents."

---

[21] https://www.ucbi.com/support/cares-act/

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

73.     In addition to these statements reflecting that the PPP did not mandate lenders to compensate agents, Defendant UCB also indicated the agent, and not the lender, that was required to submit a form-159 disclosing agents and compensation arrangements associated with small business loans.

74.     Plaintiff P&A also acted as an applicant agent for loans administered by and through Defendant TD. After Plaintiff P&A first completed the applications, Plaintiff P&A was regularly in communication with a loan officer to supply additional information, and was notified on the morning that the TD portal opened that Plaintiff P&A's client applications would need to be uploaded to the portal, and therefore did upload the applications.

75.     However, at the time Plaintiff P&A uploaded the applications, Plaintiff P&A realized that Defendant TD's portal had no place for disclosure of applicant agents.

76.     When Plaintiff P&A contacted Defendant TD to ask about the agent fee, Defendant TD, by and through its authorized agents, represented to Plaintiff that TD had elected against the payment of agent fees.

77.     The positions of lending institutions to blanket deny compensation to applicant agents contravenes not only the plain language of the Interim Final Rule, but also to S.C. Code Ann. § 34-3-240(1), governing director responsibilities of banking institutions in South Carolina.

78.     Specifically, S.C. Code Ann. § 34-3-240(1) empowers directors to appoint necessary officers and employees for banking institutions in South Carolina, and for the "faithful discharge of their respective duties."

79.     Upon information and belief, the policy positions taken by Defendant Lenders were known and authorized by the individual Defendants, as the highest-ranking members of their respective boards, and/or corporate governance committees.

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

80.     Upon information and belief, the individual Defendants knew or should have known that adopting a policy to deny compensation to applicant agents would result in Defendant Lenders receiving funds to which they were not entitled.

81.     Accordingly, the individual Defendants were responsible for ensuring that Defendant Lenders adhered to the terms of the PPP, including providing mandatory application agent compensation, and further for ensuring that Defendant Lenders did not adopt policies regarding the PPP that were contrary to law.

82.     In addition to the conduct above, upon information and belief, Defendant Lenders, with the knowledge and authorization of the individual Defendants, have created online portals and other processing methods that expressly prevent an applicant from disclosing the existence of an agent, (i.e., precluding anyone other than an owner from certifying that they have submitted the application).

83.     Upon information and belief, Defendant Lenders created these systems for the purpose of denying agent fees, despite knowledge that applicants would use professional agents to help expedite the application process.

84.     Plaintiffs believed that Defendant Lenders would pay the applicable compensation associated with successful PPP loans.

85.     However, at this time, Defendant Lenders have refused to comply with the requirements of the PPP and have retained the entire proceeds of the processing fees associated with agent-assisted loans.

86.     As a direct and proximate result of the Defendant Lenders' conduct, Plaintiffs have suffered and will continue to suffer financial harm. Furthermore, Defendants' conduct is contrary

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

to the language and spirit of the PPP, which was intended to help small businesses through the most efficient means possible.

## CLASS ACTION ALLEGATIONS

87.     Plaintiff repeats and realleges the preceding paragraphs as though set forth verbatim herein.

88.     As indicated, Plaintiff brings this action on behalf of itself and all those similarly situated as a state Class, defined as:

    a.  All agents as defined by the SBA Regulations, who are citizens, whether corporate or individual, and residents of the State of South Carolina, who assisted, facilitated, referred, or otherwise acted as an "agent" for any PPP loan submitted to Defendant Lenders that met the criteria for eligibility and was approved for funding from February 15, 2020 through June 30, 2020 or any extension of the PPP program deadline that may otherwise accrue.

    b.  Plaintiffs reserve the right to expand, limit, modify, or amend the Class definition, including the addition of one or more subclasses, including the addition, and/or substitution of any named representative.

    c.  Excluded from the class are:

        i.  Defendant Lenders, their legal representatives, elected officials, officers, directors, assigns, and successors;

        ii.  The judge, magistrate, and any special master to whom this case is assigned, and any member of their immediate families; and

        iii.  To the extent the class certification order permits exclusion, all persons who timely submit proper requests for exclusion from the plaintiff class.

89.     Upon information and belief, the Class consists of hundreds of agents, including corporations, sole proprietorships, professional associations, limited liability companies, and individuals who qualify as agents, and whose joinder in this action would be impracticable, satisfying South Carolina Rule of Civil Procedure (SCRCP), Rule 23(a)(1). The disposition of the claims of the Class in a single action will provide substantial benefits to all parties and to the court.

90.     There are questions of law and fact common to the Plaintiff and the Class, thereby satisfying Rule 23(a)(2), SCRCP. These questions include but are not limited to:

a.  Whether the Defendant Lenders are required to compensate qualified agents out of processing fees received by Defendant Lenders as a result of properly submitted PPP loan applications;

b.  Whether the Defendant Lenders' refusal to pay agent fees constitutes a violation of applicable statutes, regulations, advisories and rules, including South Carolina Code Ann. § 34-3-240;

c.  Whether the individual Defendants authorized adoption of policies excluding agents from compensation for assisting with a PPP loan application;

d.  Whether the individual Defendants authorized the use of portals and reporting mechanisms that would inhibit the identification of applicant agents;

e.  Whether the individual Defendants knowingly submitted public documents that did not reflect mandatory payment to applicant agents;

f.  Whether the Defendant Lenders' refusal to pay agent fees is a violation of the public policy of the state of South Carolina;

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

g.  Whether the Defendant Lenders engaged in concerted effort to prevent, disclosure, and/or identification of authorized agents who assisted in the PPP process;

h.  Whether Defendant Lenders accepted processing fees associated with successful PPP loan applications while concealing that they would not pay agent fees;

i.  Whether Defendant Lenders had policies or procedures in place to assure compliance with the PPP;

j.  Whether Defendant Lenders had policies or procedures in place with respect to agent compensation from PPP loan processing fees;

k.  Whether new or qualified Defendant Lenders represented to the SBA that they would comply with all requirements of the PPP in order to receive processing fees;

l.  Whether Defendant Lenders knowingly, or with a reckless disregard, withheld agent processing fees from successful PPP loan applications;

m.  Whether the Plaintiff Class are entitled to damages, restitution, and/or additional equitable and injunctive relief as a result of the Defendant Lenders' conduct;

n.  Whether the Defendant Lenders must be disgorged of processing fees they have received; and

o.  Such other common and/or typical questions as may be revealed during discovery of this case.

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

91.     Resolution of these common questions in a single action will eliminate the risk of inconsistent and varying adjudications, and it will allow Class members to present their claims efficiently and share the costs of litigation, experts, and discovery.

92.     Plaintiff's claims are typical of the claims of the members of the Class, thereby satisfying Rule 23(a)(3), SCRCP. Plaintiff's claims arise from the same nucleus of operative fact and are intended to correct and prevent the same improper conduct that has impinged or will impinge identically upon Plaintiff and all members of the Class.

93.     Defendants have exhibited that they will act and have acted or refused to act in ways that are universal to the Class.

94.     Plaintiff will fairly and adequately protect the interests of the Class, thereby satisfying Rule 23(a)(4), SCRCP. Plaintiffs' interests are coincident with and not antagonistic to the interests of the members of the Class, and Plaintiff is represented by experienced and able counsel who have previously litigated class actions. Plaintiff and counsel are committed to vigorously prosecuting this action on behalf of the plaintiff Class, and they have the financial resources and intellectual wherewithal to do so.

95.     Plaintiff and members of the Class have each suffered damages that exceed One Hundred Dollars ($100.00), thereby satisfying Rule 23(a)(5), SCRCP.

## FOR A FIRST CAUSE OF ACTION AS TO ALL DEFENDANTS
### (DECLARATORY RELIEF UNDER S.C. UNIFORM DECLARATORY JUDGMENT ACT, S.C. Code Ann. § 15-53-10, *et seq,*)

96.     Plaintiff repeats and realleges the preceding paragraphs as though set forth verbatim herein.

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

97.     As set forth above, Plaintiffs consist of a Class of individuals and entities, existing pursuant to the laws of South Carolina, or who are citizens and residents of South Carolina, who were duly authorized agents as contemplated under the PPP Interim Final Rule.

98.     As agents under the PPP Interim Final Rule, Plaintiffs helped to prepare and submit applications for substantial loans to be administered through Defendant Lenders.

99.     According to the plain language of the PPP Interim Final Rule, Defendant Lenders received a substantial processing fee for administering PPP loans, and were responsible for compensating applicant agents with a portion of the processing fee.

100.    In addition, pursuant to S.C. Code Ann. § 34-3-10, *et seq*., Defendant Lenders constituted banking institutions in South Carolina, and were responsible for adhering to the statutes, regulations, and policies and procedures in place for lending institutions, including the faithful discharge of duties in accord wit S.C. Code Ann. § 34-3-240(1).

101.    However, Defendant Lenders have refused to provide the applicant agents with duly owed compensation, in contravention to the language of the PPP, as well as S.C. Code Ann. § 34-3-240(1).

102.    Accordingly, an actual controversy exists pursuant to statute, and/or contract, and/or impacting Plaintiffs' legal rights, and Plaintiffs seek a declaration from this court for the following:

    a.  Declaring that Plaintiffs are authorized applicant agents entitled to compensation by Lenders under the PPP;

    b.  Declaring that Lenders are required to compensate applicant agents under the PPP;

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

    c.   Declaring that where a Lender undertakes to administer PPP loans, S.C. Code Ann. § 34-4-240(1) requires the individual Defendants to ensure Defendant Lenders' compliance with the terms and conditions associated with that program;

    d.   Declaring that a percentage of Lender processing fees paid to Lenders who have failed to compensate applicant agents must be set aside to be administered to the applicant agents, said amount not to exceed the maximum amount payable by PPP, plus interest;

    e.   For the payment of costs and fees reasonably necessary to effectuate this relief; and

    f.   For such other relief as this court deems just and proper.

## FOR A SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS
### (UNJUST ENRICHMENT AND/OR QUANTUM MERUIT)

103.    Plaintiff repeats and realleges the preceding paragraphs as though repeated verbatim herein.

104.    As set forth above, Plaintiffs are a group of duly authorized applicant agents, as contemplated by the PPP Interim Final Rule, and South Carolina citizens and residents, who assisted loan applicants in completing and submitting their PPP loan applications to the Lender Defendants.

105.    As set forth in the PPP Interim Final Rule, Lenders were incentivized to become involved in the PPP by way of "substantial processing fees,"

106.    As further set forth in the PPP Interim Final Rule, Lenders "will" pay duly authorized agents in amounts stated in the Rule, and consistent with the Administrator's understanding of the value associated with the agent's assistance.

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

107.    Defendant Lenders, by and through their agents, employees, representatives, and/or assigns, processed hundreds of agent-assisted PPP applications, and received substantial benefits from agent involvement in the application process, including but not limited to:

     a.  Reducing the number of points of contact for Lenders requesting additional information;

     b.  Enhancing the application process through the use of licensed professionals or members of professional staff;

     c.  Increasing the number of applications received by lending institutions;

     d.  Increasing the number of applications that a lending institution could successfully process.

108.    Defendant Lenders realized the benefits associated with agent-assisted PPP loans when, upon disbursement of the loans, Defendant Lenders received substantial processing fees commensurate with the size of the loans.

109.    Yet, upon information and belief, and despite the mandate that applicant agents will be paid a portion of the processing fees, Defendant Lenders, by and through the individual Defendants, adopted policies prohibiting payment of agent fees.

110.    Defendant Lenders have been unjustly enriched by retaining the full benefit of the processing fees for agent assisted PPP loans.

111.    As a direct and proximate result of Defendants' conduct, Plaintiffs have sustained and will continue to sustain economic harm associated.

112.    Accordingly, Plaintiffs seek remittance of the agent fees from Defendant Lenders and/or disgorgement of the entire proceeds of Defendant Lenders' ill-gotten gains, and further seek

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

all pre-judgment interest, attorney's fees and costs, and such other relief as this court deems due and proper.

## FOR A THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS
### (CONVERSION UNDER S.C. Code Ann. §36-3-240)

113.    Plaintiff reiterates and realleges the preceding paragraphs as though repeated verbatim herein.

114.    As set forth herein and above, Plaintiffs are a group of duly authorized applicant agents, as contemplated by the PPP Interim Final Rule, and South Carolina citizens and residents, who assisted loan applicants in completing and submitting their PPP loan applications to the Lender Defendants.

115.    Plaintiffs, as applicant agents, provided assistance to small businesses to submit loan applications to Defendant Lenders, and Defendant Lenders processed those applications with the knowledge that each successful application would result in payment of a substantial processing fee.

116.    The substantial processing fee was to be paid to the Defendant Lenders, and to the applicant agents, in amounts set forth in the PPP Interim Final Rule.

117.    Defendant Lenders have retained the entire benefits of the processing fee, to the complete exclusion of Plaintiffs.

118.    Upon information and belief, the conduct of Defendant Lenders in obtaining the entire proceeds of the processing fee to the exclusion of Plaintiffs was authorized, known and condoned by the individual Defendants.

119.    As a direct and proximate result of Defendants' conduct in obtaining the full proceeds of the processing fee to the exclusion of Plaintiffs, duly authorized applicant agents, Plaintiffs have sustained and will continue to sustain economic damages.

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

120.     Accordingly, Plaintiffs seek remittance of the agent fees from Defendant Lenders and/or disgorgement of the entire proceeds of Defendant Lenders' ill-gotten gains, and further seek all pre-judgment interest, attorney's fees and costs, and such other relief as this court deems due and proper.

### FOR A FOURTH CAUSE OF ACTION AS TO THE INDIVIDUAL DEFENDANTS
### (BREACH OF FIDUCIARY DUTY)

121.     Plaintiff reiterates and realleges the preceding paragraphs as though repeated verbatim herein.

122.     As stated previously, Plaintiffs are a group of duly authorized applicant agents, as contemplated by the PPP Interim Final Rule, and South Carolina citizens and residents, who assisted loan applicants in completing and submitting their PPP loan applications to the Lender Defendants.

123.     At all times relevant to this complaint, the individual Defendants are the directors and chairpersons of the Defendant Lenders, and authorized Defendant Lenders to participate in the PPP loan assistance program, wherein small businesses would receive forgivable loans to be administered by private lenders.

124.     In participating as lenders in the PPP, the individual Defendants were aware that Defendant Lenders would be paid a substantial processing fee associated with every successful loan application.

125.     In addition, and as set forth in the plain language of the PPP, Defendant Lenders were responsible for compensating agents who assisted in submitting PPP loan application to Defendant Lenders.

126.     The mandate that Defendant Lenders would compensate agents out of the proceeds of the processing fee paid to Defendant Lenders created a special relationship between Defendants

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

and members of the Plaintiff class, whereby Defendants would be in possession of valuable consideration designated to compensate the Plaintiff class.

127.     With knowledge of this special relationship, upon information and belief, the individual Defendants adopted policies and procedures to exclude payment to the Plaintiff class of legitimate fees owed for assisting in and submitting PPP loan applications to Defendant lenders.

128.     As a result of the conduct of the individual Defendants, Plaintiffs have sustained and will continue to sustain actual damages and economic harm.

129.     Accordingly, Plaintiffs are entitled to actual and compensatory damages, and for punitive damages, attorney's fees and costs, and such other relief in law or equity as this court deems just and proper.

### FOR A FIFTH CAUSE OF ACTION AS TO THE INDIVIDUAL DEFENDANTS
### (NEGLIGENCE PER SE – Violation of S.C. Code Ann. § 34-4-240(1))

130.     Plaintiff reiterates and realleges the preceding paragraphs as though repeated verbatim herein.

131.     Plaintiffs are a group of duly authorized applicant agents, as contemplated by the PPP Interim Final Rule, and South Carolina citizens and residents, who assisted loan applicants in completing and submitting their PPP loan applications to the Lender Defendants.

132.     Under the PPP, Defendant Lenders would receive payment of a processing fee for every successful application that converted into disbursement of a small business loan.

133.     According to the PPP, a portion of this processing fee was to be paid to applicant agents, such as the Plaintiff class, up to a set amount, and consistent with the Administrator's determination.

134.     At all times relevant to this complaint, the individual Defendants have been chairpersons, and Chief Executive Officers for Defendant Lenders, and were empowered by S.C.

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

Code Ann. § 34-4-240(1) to hire all necessary personnel to faithfully administer Defendant Lender's responsibilities as banking institutions operating in South Carolina.

135.     Upon information and belief, with respect to their obligation to ensure that Defendant Lenders faithfully administered their responsibilities, the individual Defendants failed in each of the following particulars:

a.   Adopting policies and/or procedures in contravention to the applicable law regarding payment of agent fees;

b.   Failing to properly train agents and/or employees as to the PPP;

c.   Failing to effectively oversee agents and/or employees in administering PPP loans;

d.   Retaining the entire proceeds of the processing fees associated with PPP loans without regard for whether a duly authorized applicant agent existed;

e.   Creating systemic policies that precluded identification of applicant agents;

f.   Such other actions in law as may be revealed during a trial of this matter.

136.     In general, the violation of a statute constitutes the negligence per se of the offending entity, particularly where, as here, individuals who were intended to be protected are harmed.

137.     As a direct and proximate result of the individual Defendants' violations and failures with respect to S.C. Code Ann. § 34-3-240(1), Plaintiffs sustained and will continue to sustain actual damages.

138.     Accordingly, Plaintiffs are entitled to actual and compensatory damages, and for punitive damages, attorney's fees and costs, and such other relief in law or equity as this court deems just and proper.

WHEREFORE, Plaintiffs pray for the following relief:

    a.   An order certifying Plaintiffs as a class;

    b.   An order declaring that Defendants' conduct above constitutes violations of the PPP Interim Final Rule, and South Carolina Code Ann. § 34-3-240, and the public policy of the state of South Carolina;

    c.   An order that the individual Defendants, by virtue of their participation in the PPP, shared a special relationship with the Plaintiff Class, and thus owed the Plaintiff Class fiduciary duties of care;

    d.   Actual and consequential damages associated with Defendants' conduct;

    e.   Punitive damages associated with Defendants' conduct;

    f.   Attorney's fees and legal costs;

    g.   Pre-judgment interest, and post-judgment interest; and

    h.   Such other relief in law or equity as this Court deems just and proper.

Respectfully Submitted,

*s/ A. Gibson Solomons, III*
Daniel A. Speights (SC Bar #5207)
A. Gibson Solomons, III (SC Bar #68291)
SPEIGHTS & SOLOMONS, LLC
100 Oak Street East
Hampton, SC 29924
TEL: (803) 943-4444 / FAC: (803) 943-4599
dspeights@speightsandsolomons.com
gsolomons@speightsandsolomons.com

*s/ Jessica L. Fickling*
J. Preston Strom, Jr. (SC Bar #5400)
Jessica L. Fickling (SC Bar #100161)
STROM LAW FIRM, LLC
6923 N. Trenholm Road, Suite 200
Columbia, SC 29206
TEL: (803) 252-4800 / FAC: (803) 252-4801

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE#2020CP3000508

ELECTRONICALLY FILED - 2020 Jun 15 4:38 PM - LAURENS - COMMON PLEAS - CASE #2020CP3000508

petestrom@stromlaw.com
jfickling@stromlaw.com

*ATTORNEYS FOR PLAINTIFF*